CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
for Roanoke
SEP 09 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM W. THOMAS, JR., ) | |
| ) | Civil Action No. 7:10-cv-00553 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Glen E. Conrad |
| CITY OF STAUNTON, VIRGINIA, et al., ) | Chief United States District Judge |
| ) | |
| Defendants. ) | |

On December 13, 2010, William W. Thomas, Jr. ("Thomas" or "plaintiff") initiated this pro se action under 42 U.S.C. § 1983 against the City of Staunton ("City of Staunton" or "City") and against various John Doe defendants, alleging that the defendants violated several of his constitutional rights in connection with a forty-year homicide investigation that eventually culminated in his exoneration. The City of Staunton moved the court to transfer venue to the Harrisonburg division and also moved the court to dismiss the complaint for failure to state a claim upon which relief can be granted. The court heard oral argument on these motions on August 3, 2011. At the conclusion of the hearing, the court granted the plaintiff three additional weeks in which to amend his complaint or to submit additional arguments. Thomas filed his post-hearing brief on August 23, 2011. As discussed below, this motion to dismiss will be treated as a motion for summary judgment. After considering the materials submitted by the parties, the court concludes that it must dismiss the complaint.

## Background

The court will summarize the facts, as it must, in the light most favorable to the plaintiff, the nonmoving party. Purdham v. Fairfax Cnty. Sch. Bd., 637 F.3d 421, 426 (4th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

On April 11, 1967, two High's Ice Cream Store employees, Constance Hevener ("Hevener") and Carolyn Perry ("Perry"), were shot and killed inside the store. The investigation of the murders was conducted by the chief detective for the Staunton Police Department, Dave Bocock ("Bocock"). (Docket No. 1 at ¶¶ 12-13.) The plaintiff was indicted on November 15, 1967 for the two murders. (Id. at ¶ 8.) Despite the twin indictments, though, the plaintiff was tried only for the murder of Hevener and ultimately was acquitted in April 1968. (Id. at ¶¶ 9-10.) However, Thomas alleges that the murder charge related to the second victim, Perry, remained open against him during the ensuing forty years until December 2008. (Id. at ¶ 11.)

Following Thomas' acquittal on the first murder charge, Bocock and the City of Staunton persisted in their investigation of the plaintiff on the second murder charge. (Id. at ¶ 13.) In June 1980, the City of Staunton "demot[ed]" Bocock from detective work and placed him in auxiliary service. (Id. at ¶ 15.) However, Thomas alleges, the City of Staunton failed to review Bocock's previous work as a detective, including his work on the High's murder investigation. (Id.) In fact, Thomas alleges, the City of Staunton "continued to sponsor investigation and harassment of the [p]laintiff for more than 30 years in the effort to hold [him] accountable for the second murder." (Id.) During this "vigorous" investigation, the plaintiff alleges, the City of Staunton made periodic derogatory remarks about Thomas. (Id. at ¶ 13.)

According to the plaintiff, December 2008 heralded the death-bed confession of Sharron Smith ("Smith"), who admitted that she, and not Thomas, had committed the 1967 double homicide. (Id. at 11.) The plaintiff alleges that several individuals confronted Smith, who died one month later in January 2009, and extracted from her not only a confession to the murders, but also an account of a bad faith coverup by Bocock. (Id. at ¶¶ 12, 18). Smith's confession

recounted how, on the day following the murders, she confessed to Bocock and collaborated with him in burying the murder weapon at his farm. (Id. at ¶ 12.) Bocock, who died in 2006, then embarked on a phony investigation of the plaintiff that led to his indictment for both murders, despite Bocock's first-hand knowledge that Smith had perpetrated the crimes. (Id. at ¶ 13.) Thomas alleges that an intimate relationship existed between Bocock and Smith during the time that Bocock chaired the murder investigation. (Id. at ¶ 14.)

The plaintiff alleges that the City of Staunton sponsored the thirty-year investigation against him despite the fact that Staunton Police Department records released in December 2008 manifested that the City "knew, or should have known, that Smith was a serious suspect, and that Bocock should have been suspected of having an inappropriate relationship with Smith." (Id. at ¶ 17.) In fact, the plaintiff alleges, Smith ultimately gave her confession not as a result of any affirmative conduct on the City's part, but through the independent inquiries of private individuals. (Id. at ¶ 18.) Even after Smith's confession emerged, the City of Staunton "was slow to act and was prodded by Crime Stoppers to arrest Smith." (Id.) "The scenario," Thomas alleges, "was the City of Staunton wanted Smith, then in terminal condition, to die before the charge and arrest could be expedited[.]" (Id.) Thomas indicates that all charges against him were dismissed after Smith's confession and subsequent arrest. (Id. at ¶ 19.) The plaintiff asserts that he "did not become aware of the violation of his Constitutional rights by Bocock and others, until the press conference in late December 2008, at which the Staunton Police reveled [sic] the contents [of] Smith's confession." (Docket No. 19 at 3.)

Thomas initiated this lawsuit on December 13, 2010, advancing several theories under which he alleges that the City of Staunton and various John Doe defendants violated his constitutional rights. The plaintiff claims that both Staunton police personnel who served with or

3

under Bocock and "other police organizations" conspired and engaged in activities that violated his rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. (Docket No. 1 at ¶ 21.) The plaintiff further alleges that the City of Staunton, through its police department, adopted an official policy of slander as it continued to investigate him, thereby causing others to suspect him of murder, even though the City knew, or should have known, that Thomas was innocent. (Id. at ¶ 22.) The plaintiff also alleges that the City of Staunton acted with deliberate and reckless indifference to his constitutional rights and that the City authorized the campaign against Thomas. (Id. at ¶ 23.) Finally, the plaintiff maintains that the City failed to properly train, evaluate, and supervise Bocock. (Id. at ¶ 24.)

As a result of these alleged wrongs, the plaintiff incurred expense in defending himself against the charged crimes and further "experienced loss of liberty, loss of income[,] . . . loss of ability to earn income, injury to physical health, . . . great emotional injury, loss of reputation, loss of assets, and general loss of adequate quality of life." (Id. at ¶ 25.) Thomas also references, in his brief in response to the City's motion to dismiss, several occasions on which he "was arrested in other jurisdictions and was told he was being held pursuant to a call from the Staunton Police because he was charged with murder in Virginia." (Docket No. 19 at 4.) The plaintiff therefore seeks monetary damages against the City of Staunton in the amount of two hundred million dollars and against each of the various John Doe defendants in the amount of five million dollars. (Docket No. 1 at ¶ 26.)

On May 31, 2011, the City of Staunton filed a motion to transfer venue to the Harrisonburg division of this court and, on June 2, 2011, filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

4

## Standard of Review

A Rule 12(b)(6) motion to dismiss must be treated as a motion for summary judgment "where materials outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). In this case, both Thomas and the City of Staunton present materials outside the pleadings on the issue whether the second murder charge remained outstanding against Thomas until December 2008. (Docket Nos. 14-1, 19-1 at 5.) Furthermore, the court relied in several instances on the plaintiff's responsive brief to reconstruct the factual background in this case. (Docket No. 19.) The court also references the plaintiff's post-hearing brief. (Docket No. 24.) Because the court considers these materials outside the pleadings, the court will treat the City of Staunton's motion as one for summary judgment.

In considering a motion for summary judgment under Federal Rule of Civil Procedure 56, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citation omitted). The court may grant summary judgment only when, viewing the record as a whole and in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). For a party's evidence to raise a genuine issue of material fact that avoids summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Case 7:10-cv-00553-GEC Document 25 Filed 09/09/11 Page 5 of 13 Pageid#: 117

## Discussion

By enacting 42 U.S.C. § 1983, Congress created a remedy for deprivations of constitutional rights committed by persons acting under color of state law. 42 U.S.C. § 1983; Haywood v. Drown, 129 S. Ct. 2108, 2111 (2009). The statute's text imposes several sweeping limitations on the scope of § 1983. See Dist. of Columbia v. Carter, 409 U.S. 418, 424 (1973) (observing that § 1983 "is of only limited scope"). First, § 1983 "deals only with those deprivations of rights that are accomplished under the color of the law of 'any State or Territory.'" Id. (footnote omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Generally, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50 (citations omitted).

Another limitation imposed upon § 1983 is that the statute applies only to "person[s]" acting under the color of state law. 42 U.S.C. § 1983. The Supreme Court has concluded that municipalities and other local governmental bodies may constitute persons within the meaning of § 1983 and, thus, may be subject to liability under § 1983. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 (1978). However, the Court also concluded that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. Thus, § 1983 liability does not automatically flow to a local governmental body merely because a government employee acts under color of state law to violate a person's constitutional rights. Rather, § 1983 liability accrues to a local governmental unit only "if the governmental body itself 'subjects' a

6

person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 692); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (determining that § 1983 renders municipalities liable only for their own illegal acts). To impose § 1983 liability on local governments, a plaintiff "must prove that 'action pursuant to official municipal policy' caused the[] injury." Connick, 131 S. Ct. at 1359 (quoting Monell, 436 U.S. at 691). The Court explained that official municipal policy, within the meaning of § 1983 liability, embraces "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. (citations omitted).

Keeping in mind this summary of § 1983 jurisprudence, the court now turns to an analysis of Thomas' claims.[1] The court notes that the plaintiff's complaint names as defendants only the City of Staunton and six John Does. The complaint does not name Bocock as a defendant. Instead, the complaint manifests Thomas' affirmative intent not to sue Bocock—he describes the six John Doe defendants as persons or entities who are "currently living." (Docket No. 1 at ¶¶ 5-6.) The plaintiff's post-hearing brief evinces the identical intent, acknowledging that "Bocock . . . [is] now deceased and [his] estate[] ha[s] long since been closed" and that "[i]t would be futile to sue . . . the Bocock . . . estate[] since [it is] closed." (Docket No. 24 at 2.)

---

[1] While the City of Staunton has raised a defense based on the applicable statutes of limitations (Docket No. 15 at ¶ 34.), the court elects not to rely on this defense as the basis for dismissing the plaintiff's complaint, inasmuch as the court would have to make additional factual determinations with respect to the accrual of the various causes of action in order to determine the viability of such a defense. There are other more fundamental bases for dismissal of this case rather than a statute of limitations defense that is so heavily fact-dependent.

7

Thus, since Thomas has clearly stated his intent not to sue Bocock, the ensuing analysis examines claims against only the City of Staunton and six living John Doe defendants.[2]

A.   **Claims against various John Doe defendants**

The plaintiff alleges that the John Doe defendants incurred liability because they participated in the botched investigation and conspired with Bocock to violate the plaintiff's constitutional rights. Even assuming that any of the John Does acted under color of state law, the plaintiff alleges no facts to suggest that they knew or had reason to know that they had committed a constitutional tort. Indeed, Thomas alleges no facts demonstrating that any Staunton employee, besides Bocock, knew or had reason to know that Smith, and not Thomas, committed the murders.[3] (Docket No. 1 at ¶¶ 13-14.) Thomas further alleges that, when Smith confessed to the murders in 2008, Smith implicated only Bocock in the coverup and in the ensuing investigation against Thomas. (Id. at ¶ 12; Docket No. 19 at 1.) In short, the facts alleged by Thomas simply fail to state viable constitutional claims against any unnamed persons—the allegations in the complaint turn almost exclusively on the actions of the City of Staunton and Bocock. Hence, Thomas fails to present any facts or evidence creating a genuine

---

[2]   Thomas also implicates in his complaint and briefs two other individuals—Floyd Jarvis, Bocock's now-deceased partner on the detective squad that managed the double homicide investigation, and Lacy King, the current Mayor of Staunton who succeeded Bocock to the position of Chief of the Staunton Police Department following Bocock's demotion. (Docket No. 1 at ¶ 15; Docket No. 19 at 3.) However, the plaintiff's complaint likewise fails to name these two individuals as defendants. Thomas acknowledges Jarvis' death (Docket No. 24 at 2), and further manifests his intention not to sue Jarvis based on the fact that, as explained above, the six John Doe defendants named in the complaint are individuals who are currently living. (Docket No. 1 at ¶¶ 5-6.) The plaintiff apparently chose not to name King as a defendant in the case. As explained above, the complaint names as defendants only the City of Staunton and six John Does.

[3]   For that matter, Thomas does not claim that any person, besides Smith and Bocock, had actual knowledge as to the identity of the murderer or the existence of a coverup. Inasmuch as there is no allegation that any of the defendants actually knew about the coverup, or agreed with anyone else to perpetrate the coverup, it follows that none of the defendants engaged in a conspiracy to falsely prosecute the plaintiff. Wright v. Commonwealth, 224 S.E. 2d 711, 713 (Va. 1982) (stating that a conspiracy requires proof of "an agreement between two or more persons by some concerted action to commit an offense" (citation and internal quotation marks omitted)); see also Caldwell v. Green, 451 F. Supp. 2d 811, 821-22 (W.D. Va. 2006) (noting the existence of a civil rights conspiracy statute, 42 U.S.C. § 1985, under which a plaintiff must show an agreement or a meeting of the minds by the defendants to violate the plaintiff's constitutional rights (quoting Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995))).

8

issue of material fact with respect to the six John Does. For this reason, the court must dismiss the plaintiff's complaint to the extent that he seeks to recover against the John Doe defendants.

### B. Claims against the City of Staunton

The court notes initially that the type of action that the plaintiff initiates against the City of Staunton can survive only in rare circumstances. As stated above, § 1983 applies to <u>persons</u> acting under color of state law. Although a local governmental unit may qualify as a person within the meaning of the statute, § 1983 does not support actions based on vicarious liability. <u>Monell</u>, 436 U.S. at 691. Thus, a local governmental body incurs § 1983 liability only through the perpetuation of some official policy or custom that serves to violate the plaintiff's constitutional rights.

The court now turns to Thomas' constitutional tort claims against the City. Based on the complaint, it appears that Thomas seeks to impose § 1983 liability on the City under three different theories, which are examined below.

#### 1. Vicarious liability

As explained above, there can be no claim under § 1983 premised on vicarious liability. <u>Id.</u> Hence, Thomas' complaint must fail to the extent that Thomas seeks to hold the City liable based solely upon the fact that the City employed Bocock. See <u>id.</u> (concluding that "a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory").

#### 2. Official policy or custom

The plaintiff also seeks to recover against the City based on the contention that the City sponsored an official policy of slander against him and further authorized a fraudulent campaign to hold the plaintiff accountable for the double homicide. However, the court concludes that this theory of liability must fail for two reasons. First, the complaint attributes to Bocock all of the

9

relevant acts and no one, including Thomas, presents facts to suggest that the City was cognizant of the tortious nature of Bocock's actions. Second, the complaint fails to supply any facts demonstrating that the City sponsored similar coverups on a routine basis. The facts alleged by Thomas in his complaint concentrate solely on the City's conduct toward the plaintiff personally—he fails to proffer any factual assertions exhibiting widespread conduct by the City implicating alleged victims besides himself. See, e.g., Carter v. Morris, 164 F.3d 215, 220 (4th Cir. 1999) (determining that the plaintiff failed to provide sufficient evidence of a widespread and permanent practice necessary to establish a municipal custom where the plaintiff identified "no relevant incident prior to her own case of which the City could have had knowledge and in which it acquiesced"); Lanford v. Prince George's Cnty., MD, 199 F. Supp. 2d 297, 305 (D. Md. 2002) (dismissing the plaintiff's municipal liability claim, where the plaintiff "provided no allegations, except those surrounding his own arrest and injury, to establish that [the municipalities had] a policy or custom of 'excessive force, improper supervision, police misconduct, and use of excessive force'"). Therefore, the complaint must fail to the extent that Thomas seeks to impose § 1983 liability on the City based on the alleged proliferation by the City of some official policy or custom.

### 3. Failure to train

Thomas also seeks to recover from the City under a § 1983 failure to train theory. The Supreme Court has recognized that, "[i]n limited circumstances, a local government's decision not to train employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 131 S. Ct. at 1359. However, in recognizing the possibility of a § 1983 failure to train claim, the Court also observed that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim

turns on a failure to train." Id. (citing Okla. City v. Tuttle, 471 U.S. 808, 822-23 (1985) (plurality opinion)). A failure to train claim rises to the level of a § 1983 violation only if the municipality's failure to train its employees amounts to deliberate indifference to a known or obvious risk of harm resulting from its inaction. Id. at 1359-60 (citations omitted). Furthermore, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360 (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 409 (1997)). As explained above, Thomas alleges facts that focus only on the circumstances surrounding his own case—he provides no facts to demonstrate a widespread pattern of deficient training by the City.

Although a pattern of similar constitutional violations is "ordinarily necessary" to assert a § 1983 failure to train claim, the Supreme Court nonetheless has acknowledged a narrow exception to this rule. In describing this "single-incident" liability exception, the court posed the hypothetical example of "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." Id. at 1361 (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 390 n.10 (1989)). In other words, the Court recognized that, in certain "rare" circumstances, the "unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. Based on the plaintiff's allegations in the instant case, the court concludes that any alleged failure by the City of Staunton to train Bocock or other officers does not fall within the "narrow range of Canton's hypothesized single-incident liability." Id. Thomas alleges no facts to suggest both a patently obvious need "for more or different training" of Staunton police officers and a resulting likelihood of constitutional violations, such that the City of Staunton "can

11

reasonably be said to have been deliberately indifferent to the need." Canton, 489 U.S. at 390 (footnote omitted). Instead, under the plaintiff's factual allegations, it seems that Bocock's actions were associated with some misguided romantic attachment rather than with a more fundamental and pervasive misunderstanding as to constitutional rights in general. For these reasons, the plaintiff fails to submit in his complaint factual allegations that would support a finding of § 1983 liability against the City of Staunton under a failure to train theory. Thus, based on the foregoing analysis, the court concludes that the complaint fails to state any viable § 1983 claims against the City and, therefore, that the complaint must be dismissed.

## Conclusion

The court alerted the plaintiff at the August 3 hearing to the abovementioned deficiencies in his complaint—it was for this very reason that the court supplied the plaintiff with additional time to plead relevant facts in his complaint. However, the plaintiff's post-hearing brief misses the mark. Conclusory allegations and recitations of elements of legal causes of action fail to satisfy the factual pleading standard imposed on plaintiffs by the Supreme Court. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Because Thomas presents no facts that create a genuine issue of material fact with respect to § 1983 liability, the court must dismiss the plaintiff's complaint.

The court recognizes that under the facts alleged in the complaint, the plaintiff has been treated unfairly. The court does not doubt that the plaintiff, as a result of the events over the last forty years, suffered inconvenience, ill will, disruption of his life, and injury to his reputation and to his standing in the community. However, none of this suffering rightly can be attributed to the City or to the various John Doe defendants. Accordingly, this action cannot go forward. For the reasons detailed above, the court will grant the City of Staunton's motion to dismiss (Docket No.

14) on the ground that the plaintiff fails to demonstrate the existence of a genuine issue of material fact.[4]  An appropriate order shall issue.  The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the parties.

ENTER: This 9th day of September, 2011.

Chief United States District Judge

---

[4] The court's dismissal of the plaintiff's complaint renders moot the City of Staunton's motion to transfer venue. (Docket No. 12.)